■ In the Matter of ALFRED S. HOWES, Petitioner, v RODERICK G. W. CHU et al., Constituting the State Tax Commission, Respondents. — Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Albany County) to review a determination of the State Tax Commission which sustained an unincorporated business income tax assessment imposed under article 23 of the Tax Law.

Petitioner timely filed New York State personal income tax returns for 1971 and 1972. However, because it contended that the income from petitioner's activities in the insurance business was subject to the unincorporated business income tax, the Audit Division of the State Department of Taxation and Finance issued a notice of deficiency to petitioner in February, 1977, in the amount of $4,814.60 plus interest, for unincorporated business income tax for 1971 and 1972. The State Tax Commission held a hearing upon petitioner's application for a redetermination of the assessment.

Petitioner testified at the hearing that he was employed as an insurance salesman during the years 1971 and 1972 by the Connecticut Mutual Life Insurance Company (Connecticut Mutual) under a written contract. According to petitioner, under the contract's terms he was characterized as a full-time agent and has been such since 1938. In pertinent part, the contract provided that: "The Agent shall be free to exercise his own judgment as to the time, place and means of soliciting and procuring applications for insurance and annuities under the authorization contained in this Agreement. Nothing contained

herein shall be construed to create the relationship of employer and employee between the Company and the Agent."

Petitioner testified that Connecticut Mutual provided him with one or more full-time secretaries, office facilities and equipment, including telephones for all local and for some long-distance calls, a pension plan and health insurance. When he was not traveling on business, petitioner was regularly in his office between 9:00 A.M. and 5:00 P.M., which was more a matter of habit than direction. He did not personally do any hiring of personnel.

Petitioner's office space was contiguous with that of Connecticut Mutual's general agent in New York. Frequently, either the general agent or people from Connecticut Mutual's home office would review with petitioner the amount of business being placed with Connecticut Mutual and the amount and type of insurance being placed elsewhere. Petitioner testified that there had always been an understanding that Connecticut Mutual would receive applications from petitioner on a first refusal basis. When petitioner traveled, he would keep the general agent informed of his whereabouts and the type of cases he was working on, generally by phoning the office once a day. The general agent had the right to disapprove of petitioner's plans to pursue leads if they represented risks the company would not insure. Additionally, the general agent had the right to rule on when petitioner took vacations.

It was expected, although not required, that petitioner would attend sales and training meetings run by Connecticut Mutual. Connecticut Mutual would suggest markets for petitioner to tap, which petitioner followed. Petitioner testified that where Connecticut Mutual did not want business, for example, group life insurance which it does not write, petitioner was free to write such group policies with other companies.

Petitioner also testified that he was president of Employee Incentive Plans of America, Inc. (EIPA). EIPA had no contract with Connecticut Mutual; rather, it specialized in handling those businesses or types of prospective insureds which Connecticut Mutual would not handle. Also, there was testimony that as a result of discussions between petitioner and Connecticut Mutual, Bering Trading Corporation[*] was formed by petitioner as an agent for Connecticut Mutual, as a method of continuing the business in the event of petitioner's death. Bering would submit to Connecticut Mutual any and all business which it generated.

---

[*] The name of this corporation appears in various parts of the record as Berint or Bering Trading Corporation.

During the years in question, Bering was licensed solely with Connecticut Mutual. Petitioner was paid a managing fee by EIPA and Bering, which he often used to pay the corporations' expenses. Petitioner testified that EIPA maintained an office in California to solicit and service business for EIPA, Bering and petitioner. Additionally, petitioner stated that he had arrangements with individuals who maintained offices in Massachusetts and Connecticut. Moreover, as proof of the fact that petitioner had an office outside the State, he introduced correspondence and also an accountant's analysis to prove what portion of his income was earned outside New York.

The State Tax Commission found that petitioner's activities as an insurance salesman subjected the commissions and management fees he derived therefrom to the unincorporated business income tax. It also found that petitioner was not entitled to allocate a portion of his income to out-of-State sources. This transferred CPLR article 78 proceeding challenging that determination ensued.

The first issue in this case is whether there is substantial evidence in the record to support the Tax Commission's determination that petitioner was subject to the unincorporated business income tax. In this regard, under subdivision (b) of former section 703 of the Tax Law, the performance of services by an individual as an employee did not constitute an unincorporated business. However, an individual found to be an independent contractor was liable for payment of the unincorporated business income tax (*Matter of Liberman v Gallman*, 41 NY2d 774; *Matter of Miller v State Tax Comm.*, 94 AD2d 841). While there was evidence presented herein which would support a contrary conclusion, the record reveals that the Tax Commission's determination is supported by substantial evidence (see *Matter of Liberman v Gallman, supra; Matter of Miller v State Tax Comm., supra; Matter of Slote v Tully,* 86 AD2d 704).

Petitioner next asserts that if he is subject to the unincorporated business income tax, the Tax Commission erred in concluding that he was not entitled to an allocation of a portion of his income to out-of-State sources. During the period in question, subdivision (a) of section 707 of the Tax Law provided that: "If an unincorporated business is carried on both within and without this state, as determined under regulations of the tax commission, there shall be allocated to this state a fair and equitable portion of the excess of its unincorporated business gross income over its unincorporated business deductions. If the unincorporated business has no regular place of business outside this state, all of such excess shall be allocated to this state." A

regular place of business is defined in 20 NYCRR 207.2 (a) as "any bona fide office, factory warehouse or other place which is systematically and regularly used by the unincorporated business entity in carrying on its business" (see, also, 20 NYCRR 207.2 [c]; *Matter of McMahan v State Tax Comm.*, 45 AD2d 624, 627, mot for lv to app den 36 NY2d 646).

The Tax Commission determined that petitioner was not entitled to allocate a portion of his income to out-of-State sources because it found that he did not maintain an office outside New York State, since office space was provided and maintained by the individual concerns for whom he provided services. A review of the record reveals that the Tax Commission's determination is adequately supported (see *Matter of Giordano v State Tax Comm.*, 52 AD2d 691, mot for lv to app den 40 NY2d 803). The determination must, therefore, be confirmed.

Determination confirmed, and petition dismissed, without costs. Mahoney, P. J., Kane, Casey, Levine and Harvey, JJ., concur.

